**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CAITLIN DOLE,

                                      Plaintiff,

                - v -                                                     Civ. No. 1:16-CV-0173
                                                                       (DJS)

TOWN OF BETHLEHEM,

                                      Defendant.

**APPEARANCES:**                                      **OF COUNSEL:**

DELORENZO LAW FIRM                      THOMAS E. DELORENZO, ESQ.
*Attorneys for the Plaintiff*
The Lupe Building
670 Franklin Street, Suite 100
Schenectady, New York 12305

NAPIERSKI, VANDENBURGH LAW FIRM      SHAWN F. BROUSSEAU, ESQ.
*Attorney for the Defendant*                      THOMAS J. O'CONNOR, ESQ.
296 Washington Ave. Ext.                       DIANE LUFKIN SCHILLING, ESQ.
Albany, New York 12203

**DANIEL J. STEWART**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER[1]

Plaintiff Caitlin Dole brings this action against Defendant Town of Bethlehem pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the New York State Human Rights Law, N.Y. EXEC. LAW § 290, *et seq.* Dkt. No. 1, Compl. Briefly stated, Plaintiff alleges that she was hired as a police officer by the Town of Bethlehem Police Department on January 12, 2014. *Id.* at ¶ 10. Beginning in March 2015, Plaintiff claims that she was subjected to sexual harassment and a hostile work environment when Officer Craig Sleurs sent her numerous harassing and

---

[1] On February 6, 2017, the parties consented, pursuant to 28 U.S.C. § 636(c) and FED. R. CIV. P. 73, to have a magistrate judge exercise full jurisdiction over this matter. Dkt. No. 30.

threatening text messages and voice mails. *Id.* at ¶¶ 13-14. Plaintiff claims that she reported these incidents to her supervisor, but that nothing was done to reprimand Officer Sleurs, and on May 14, 2015, Plaintiff tendered her resignation to the Defendant Town of Bethlehem. *Id.* at ¶¶ 15-16. Presently before the Court is Defendant's Motion to Dismiss, pursuant to FED. R. CIV. P. 12(b)(6) or 12(c), or, in the alternative, for Summary Judgment, pursuant to FED. R. CIV. P. 56. Dkt. No. 26, Def.'s Mot. Plaintiff has filed a Response and Defendant has filed a Reply. Dkt. Nos. 31, Pl.'s Resp. & 35, Def.'s Reply. For the reasons that follow, Defendant's Motion is **granted** and this action **dismissed**.

## I. BACKGROUND[2]

Plaintiff was hired by the Defendant as a patrol officer effective January 12, 2014. Dkt. No. 26-30, Def.'s Rule 7.1 Statement of Material Facts ("Def.'s SMF") at ¶ 1.[3] In December 2014, Plaintiff began dating Officer Craig Sleurs, who was also assigned to the Patrol Division of the Department. *Id.* at ¶ 7; Dkt. No. 26-3, Aff. of Thomas Heffernan, dated Nov. 30, 2016, at ¶ 6. During their relationship, and at all relevant times to this action, Plaintiff was assigned to the 3:00pm to 11:00pm shift and Officer Sleurs was assigned to the 7:00am to 3:00pm shift. Heffernan Aff. at ¶¶ 4 & 6. Officer Sleurs had no supervisory authority or responsibilities during his employment

---

[2] Defendant's Motion is brought under FED. R. CIV. P. 12(b)(6) and FED. R. CIV. P. 56. Since Defendant's Motion is not limited to the allegations of Plaintiff's Complaint, but is supported by and makes reference to a substantial record, the Court will consider Defendant's Motion under the standards of FED. R. CIV. P. 56.

[3] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises." N.D.N.Y. L.R. 7.1(a)(3). Plaintiff has not filed a response to Defendant's Statement of Material Facts consistent with Local Rule 7.1(a)(3). The Court will cite to the facts as set forth in Defendant's Statement of Material Facts when properly supported by the record. *See GlobalRock Networks, Inc. v. MCI Commc'ns Servs., Inc.*, 943 F. Supp. 2d 320, 329 (N.D.N.Y. 2013) ("Where the non-movant either does not respond to the motion or fails to dispute the movant's statement of material facts, the court may not rely solely on the moving party's Rule 56.1 statement; rather the court must be satisfied that the citations to evidence in the record support the movant's assertions.") (citing *Giannullo v. City of New York*, 322 F.3d 139, 143 n.5 (2d Cir. 2003)).

with the Department. *Id.* at ¶ 8.

In March 2015, Plaintiff ended the relationship with Officer Sleurs. Dkt. No. 31-2, Aff. of Caitlin Dole, dated Feb. 10, 2017, at ¶ 5. On March 3, 2015, Officer Sleurs went on out-of-work sick leave, which he remained on until June 13, 2015. Def.'s SMF at ¶ 13. On April 16, 2015, Plaintiff also went on sick leave due to a foot injury she sustained outside of work. *Id.* at ¶ 12. Plaintiff remained on sick leave until her resignation from the Department on May 14, 2015. *Id.*

In April 2015, over one month after she ended their relationship, and while they were each on sick leave, Officer Sleurs began contacting Plaintiff by voicemail, text message, and Facebook. *Id.* at ¶ 15; Dkt. No. 26-2, Aff. of Thomas J. O'Connor, dated Dec. 13, 2016, Ex. A. The records of these voicemails, text messages, and Facebook posts were produced in Plaintiff's Rule 26 disclosures. Def.'s SMF at ¶ 15. Officer Sleurs left Plaintiff voicemails on April 22, April 27, and April 30, 2015. O'Connor Aff., Ex. A at p. 1. The voicemails are as follows:

- I hope you're fucking happy. I really do. I hope you're happy. Because you have just ruined my life. You have broken my heart, you have crushed my heart . . . and I know you don't give a fuck. (April 22, 2015)
- Hey it's Craig. You've blocked me every other way of trying to talk to you. I don't understand why . . . well I understand why, you just don't want to talk to me. I miss you. Hopefully you unblock me and talk to me again. Miss you. Bye. (April 27, 2015)
- Hey, just me. Just calling to say hi. Hopefully someday you'll talk to me again. Hope your foot is doing better. Still miss you. Bye. (April 30, 2015)
- Hey, I just wanted you to know that after this phone call, you'll never hear from me again. I see you on the street, I'll turn my back. I see you at work, I'll never talk to you. Um . . . you disgust me. You totally disgust me. So . . . have a nice fucking life. Thanks for fucking up mine. (April 30, 2015)[4]

*Id.*

---

[4] Officer Sleurs reached Plaintiff's voicemail a fifth time on April 30, but hung up without leaving a message. O'Connor Aff., Ex. A at p. 1.

Some of these messages were left from Officer Sleurs' parents' phone, after Plaintiff blocked his phone number. Dole Aff. at ¶ 7.

In a series of text messages sent on April 22, 2015, Officer Sleurs told Plaintiff

> Have a nice fucking life. Thanks for fucking with my heart and mind. Love this feeling. . . . Good fucking bye. . . . Your [sic] still on FB. Just say you don't want to talk to me anymore. Why don't you just unfriend me on FB too.

O'Connor Aff., Ex. A at p. 3.

Plaintiff responded, "[p]lease stop or I'll just block on everything." *Id.* Officer Sleurs replied,

> What's the difference. . . . Then you never have to here [sic] from me again. Should make you even happier. . . . Here I got a idea. I will fucking block you And than [sic] you won't have to worry about me ever again. Ok.

*Id.*

On April 23, the following day, Officer Sleurs sent a series of text messages apologizing and asking Plaintiff to forgive him. *Id.* at pp. 4-6. Plaintiff forgave him, but said she did not want to talk to him. *Id.* at pp. 6-7. On April 24, 2015, Officer Sleurs texted Plaintiff from his son's phone, Dole Aff. at ¶ 7, and stated that he would not bother her again and apologized that "it came to this," O'Connor Aff., Ex. A at p. 8.

Officer Sleurs also posted the following on Facebook:

> I haven't done this in a while but I'm pissed and I feel I need to get this off my chest. To the one person who shit on my heart. I hope your [sic] fucking happy. I'm glad you left me like you did cause it shows the real person you are. So have a nice fucking life and I hope to never here [sic] from you again.[5]

*Id.* at p. 10.

Plaintiff states that Officer Sleurs's behavior "concerned" her, and made her believe that "there was the potential for violence or at a minimum continued harassment." Dole Aff. at ¶ 14. She "felt extremely uncomfortable being around Officer Sleurs at work or outside of work not

---

[5] The date of this Facebook post is unclear, although the screenshot captures a second post dated April 29th.

knowing to what lengths he m[ight] go to contact [her] or harm [her] in some manner." *Id.* at ¶ 8.

On April 15, 2016, Lieutenant Thomas Heffernan discussed Plaintiff's sick leave with her and noted that she had not set a date for when she planned to return to work. Heffernan Aff. at ¶ 9. Plaintiff stated that her foot was still bothering her and that she was going to make a doctor appointment that day. *Id.* Lieutenant Heffernan mentioned a rumor that he had heard Plaintiff was planning to leave the Department for her former employer. Dole Aff. at ¶ 3(a). Plaintiff claims that she did not indicate that she intended to leave and stated that she enjoyed her shift and the people on her shift. *Id.* at ¶ 3(a)-(b). Plaintiff did not mention any problems with Officer Sleurs. Heffernan Aff. at ¶ 9.

That same day, Plaintiff's Father went to the Police Department and requested a meeting with the Chief of Police. *Id.* at ¶ 11. Because the Chief of Police was unavailable, Lieutenant Heffernan and Detective-Sergeant Adam Hornick met with him, and he advised them that Officer Sleurs had been harassing his daughter with unwelcome text messages and phone calls. *Id.* Plaintiff's Father was there without Plaintiff's knowledge and was unaware that Plaintiff had earlier talked with Lieutenant Heffernan. *Id.*

Plaintiff's Father then visited Plaintiff and told her to contact Lieutenant Heffernan to schedule a meeting. Dole Aff. at ¶ 3(d). On May 1, 2015, Plaintiff and her Mother met with Lieutenant Heffernan and Sergeant Hornick. Def.'s SMF at ¶ 27. During the meeting, Plaintiff played the voicemails and discussed the text messages and Facebook posts she had received from Officer Sleurs. *Id.* at ¶ 28. In contemporaneous handwritten notes, Lieutenant Heffernan recorded that Plaintiff stated that she did not want to "make a big deal" about the messages and hoped to keep the matter private. Heffernan Aff. at ¶ 15. He also recorded that Plaintiff stated that she did not

want to file a formal complaint, but only wanted Officer Sleurs to be ordered to have no further contact with her unrelated to her job. *Id.* Plaintiff denies having said that she did not want to "make a big deal" of it or that she did not intend to file a formal complaint. Plaintiff claims that she expressed that she felt "threatened" by these messages and stated that she "wanted something done about [Officer Sleurs'] behavior." Dole Aff. at ¶ 3(f)-(g). Plaintiff states that she brought up a prior incident in which Officer Sleurs had harassed an ex-girlfriend. *Id.* at ¶ 12. Plaintiff's Mother stated that they would do "whatever was necessary," including a formal complaint or legal action. *Id.* at ¶ 3(g)-(h). Plaintiff asserts that it was Lieutenant Heffernan who wanted to keep the matter "in house." *Id.* at 3(g).

Following his meeting with Plaintiff, Lieutenant Heffernan ordered Officer Sleurs to immediately report to the police station. Def.'s SMF at ¶ 36. Lieutenant Heffernan directed Officer Sleurs to cease all contact with Plaintiff unrelated to work duties, including contact by friends or family. *Id.* at ¶¶ 39-40. Lieutenant Heffernan then contacted Plaintiff by phone and advised her of the meeting with Officer Sleurs. *Id.* at ¶ 41. In his contemporaneous notes, Lieutenant Heffernan recorded that Plaintiff stated that she was satisfied and did not want the Department to take any further action. Heffernan Aff. at ¶ 18. Plaintiff, however, claims that she asked if any further disciplinary action would be taken against Officer Sleurs because she "was not comfortable in the same work environment." Dole Aff. at ¶ 3(i). She asserts that Lieutenant Heffernan told her that they would look into it. *Id.*

After the Department ordered Officer Sleurs to cease contact with her, Plaintiff cites several incidents that made her uncomfortable. *Id.* at ¶ 16. First, Plaintiff's Mother and Father saw Officer Sleurs driving his volunteer fire truck near Plaintiff's house. *Id.* Second, one of Plaintiff's friends

received a Facebook friend request from Officer Sleurs right after his conversation with Lieutenant Heffernan on May 1. *Id.* Third, Officer Sleurs commented on Plaintiff's brother's fiance's Facebook. *Id.*

On May 14, 2015, Plaintiff met with Lieutenant Heffernan and informed him that she was resigning from the Department and was going to submit a letter of resignation that day. Def.'s SMF at ¶ 44. The parties offer differing accounts of Plaintiff's reasons for tendering her resignation. Lieutenant Heffernan, after consulting his contemporaneous notes, reports that Plaintiff stated that she was considering either returning to her former job or attending school. Heffernan Aff. at ¶ 20. Lieutenant Heffernan asserts that Plaintiff told him that she had already been considering returning to her former job, which she liked and felt was "what she want[ed] to do," *id.* at ¶¶ 20 & 22. According to Lieutenant Heffernan, Plaintiff mentioned the minor incidents with Officer Sleurs since May 1, but stated that she had not further issues with him. *Id.* at ¶ 21. She added that she was still not comfortable with Officer Sleurs. *Id.* at ¶ 20. However, she stated that Officer Sleurs was not the reason she was resigning from the Department, although it "just sped it up." *Id.* at ¶ 22. Lieutenant Heffernan asked if there was anything else that she would have liked done, and she responded "no." *Id.* at ¶ 23.

In Plaintiff's account of the conversation, she states that she mentioned the minor incidents but was told that there was nothing that could be done. Dole Aff. at ¶ 17. She states that she did not feel comfortable that Officer Sleurs was not being reprimanded and that there was nothing that could be done. *Id.* at ¶ 18. She also remained concerned about her location being available to Officer Sleurs through the radio. *Id.* at ¶ 3(k). She represents that her concern about Officer Sleurs and the Department's lack of response led to her resignation. *Id.* at ¶ 19. Plaintiff denies that she ever said

had been planning to return to her former employer, although she admits stating that she enjoyed her time there. *Id.* at ¶ 3(j). Instead, she states that she had been considering leaving the Department since her initial complaint on May 1 out of fear for her safety. *Id.* at ¶ 3(n).

On May 18, Plaintiff met with Chief of Police Corsi and Lieutenant Heffernan for an exit interview. Def.'s SMF at ¶¶ 52 & 56. Plaintiff repeated that she had been considering leaving "for a couple months," although she claims the reason she was considering leaving was out of concern for her safety. Heffernan Aff. at ¶ 27; Dole Aff. at ¶ 3(n).

On May 29, 2015, Plaintiff met with Mary Tremblay-Glassman, Director of Human Resources for the Department. Dkt. No. 26-20, Aff. of Mary Tremblay-Glassman, dated Nov. 30, 2016, at ¶¶ 13-15. At that meeting, Plaintiff related the series of events with Officer Sleurs that led to her resignation. *Id.* at ¶ 15. According to Plaintiff, Tremblay-Glassman told her that "it was clear that [she] had been harassed since Day 1." Dole Aff. at ¶ 20.

On June 11, 2015, Plaintiff sent a letter to Chief Corsi in which she stated that Officer Sleurs was harassing people who were in contact with her on Facebook and social media. Def.'s SMF at ¶ 59. Plaintiff asserts that Officer Sleurs stopped talking to another officer who had liked her posts on Facebook. Dole Aff. at ¶ 22. On June 12, 2015, Officer Sleurs met with Chief Corsi, Lieutenant Heffernan, and Dectective Hornick. Def.'s SMF at ¶ 61. Officer Sleurs admitted that he had spoken with mutual friends of Plaintiff but had not stated anything negative. *Id.* at ¶ 62. Chief Corsi ordered Officer Sleurs to have no further contact with Plaintiff or discussion about her with her friends. *Id.* at ¶ 63. In a letter dated June 16, 2015, Chief Corsi advised Plaintiff of his meeting with Officer Sleurs and requested that she contact him directly if she had any further problems with Officer Sleurs. *Id.* at ¶¶ 64-65. On June 19, 2015, Plaintiff contacted Tremblay-Glassman and

inquired if any disciplinary action had been taken against Officer Sleurs. *Id.* at ¶ 66. Tremblay-Glassman informed her that she could not disclose any further information beyond what was in Chief Corsi's June 16, 2015 Letter. Tremblay-Glassman Aff. at ¶ 17.

Officer Sleurs returned to work from sick leave on June 14, 2015. Def.'s SMF at ¶ 14. He went back on sick leave on July 24, 2015, and has not returned to work since. *Id.* Since her June 11, 2015 Letter, Plaintiff has not made any further complaints to the Department about Officer Sleurs contacting her or her friends. *Id.* at ¶ 69.

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), and on November 30, 2015, the EEOC issued her a Right-to-Sue Letter. Compl., Ex. A. Plaintiff filed this action on February 16, 2016, asserting causes of action based upon sexual harassment and a hostile work environment. Compl.

## II. LEGAL STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d

Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations,

unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Title VII prohibits sex-based employment discrimination that creates a hostile work environment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). In order to establish a hostile work environment claim, a plaintiff must show "[1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)). Furthermore, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's sex, or other protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).[6]

In its Motion, Defendant asserts that, as a matter of law, the unwelcome communications Plaintiff received from Officer Sleurs fail to establish a hostile work environment because such communications were (1) insufficiently severe or pervasive; (2) incidental to a consensual relationship and not motivated by discriminatory animus; and (3) wholly related to off-duty conduct. Dkt. No. 26-29, Def.'s Mem. of Law at p. 15. Defendant further argues that even assuming that Plaintiff had established a *prima facie* case of a hostile work environment, she also failed to establish any basis for imputing liability to the Defendant. *Id.* at p. 20. In Response, Plaintiff requests that

---

[6] Claims brought under the New York State Human Rights Law are analyzed under the same standards Title VII claims. *E.g.*, *Ferraro v. Kellwood Co.*, 440 F.3d 96, 99 (2d Cir. 2006).

*-11-*

Defendant's Motion be denied under FED. R. CIV. P. 56(d) on the basis that she requires additional discovery, namely, the deposition of Officer Sleurs and other individuals familiar with his conduct towards women. Pl.'s Resp. Plaintiff represents that such testimony would show Officer Sleurs's propensity to harass women and Defendant's failure to appropriately reprimand him. *Id.* For the reasons that follow, the Court agrees with the Defendant that Plaintiff has failed to establish that she was subjected to a hostile work environment.[7]

### A. Whether the Harassment was Based on Plaintiff's Gender

In the first instance, Plaintiff's claim fails because there is no evidence that Officer Sleurs harassed her on account of her sex rather than the end of their personal relationship. As stated above, "[a] plaintiff pursuing a sex-based hostile work environment claim 'must always prove that the conduct at issue was not merely tinged with offensive connotations, but actually constituted discrimination because of sex.'" *Raniola v. Bratton*, 243 F.3d 610, 621 (2d Cir. 2001) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)). This may be proved where the "victim is harassed in such sex-specific and derogatory terms . . . [as] to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." *Id.* (citation omitted). Where the conduct is facially neutral, a plaintiff must offer "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Pucino v. Verizon Wireless Commc'ns, Inc.*, 618 F.3d 112, 118 (2d Cir. 2010) (quoting *Alfano v. Costello*, 294 F.3d at 378).

Notably, in similar cases, courts have found that harassment by a co-worker is not based on

---

[7] Because the Court finds that Plaintiff was not subjected to a hostile work environment, it does not address whether the hostile work environment would be imputed to the Defendant. As the Court discusses further below, it follows that the additional discovery sought by Plaintiff—which pertains to whether Officer Sleurs's conduct may be imputed to the Defendant—is appropriately denied.

sex where it arises from a failed personal relationship. *See Succar v. Dade Cty. Sch. Bd.*, 229 F.3d 1343, 1345 (11th Cir. 2000) ("Lorenz's harassment of Succar was motivated not by his male gender, but rather by Lorenz's contempt for Succar following their failed relationship; Succar's gender was merely coincidental"); *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d 415, 428 (E.D.N.Y. 2012) ("The alleged conduct in itself . . . also indicates that Wilson was motivated by frustration about the failed relationship. It appears evident that the claimed harassment at issue here was based on personal animosity, rather than a protected characteristic such as sex or race."); *Doherty v. Nederlander Producing Co.*, 2006 WL 2239421, at *5 (S.D.N.Y. Aug. 4, 2006) ("[The plaintiff] fails to allege or proffer evidence that the impetus for this behior was gender-based hostility. Rather, she acknowledges that she had been personally involved with Johnson, that she had terminated their relationship, and she alleges that his conduct stemmed from his frustration regarding the termination of their consensual personal relationship."); *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d 248, 263 (E.D.N.Y. 2006) ("Plaintiffs have failed to present any evidence which suggests that Ms. Black's 'harassment' was motivated by race or gender. Rather, all of the evidence compels the conclusion that it was driven by her frustrated amorous tryst with Gregory."). That is not to say "that employees who are themselves the victims of harassment cannot invoke Title VII's protection merely because of their previous relationship with the harasser." *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1157 (E.D.N.Y. 2003); *see also Sclafani v. PC Richard & Son*, 668 F. Supp. 2d 423, 433 (E.D.N.Y. 2009) (rejecting a rule that "would effectively immunize from Title VII liability any sexual harassment following a failed relationship"). "If a jilted lover seeks retribution through actions that are not gender – or race-based, Title VII is not implicated. If the conduct is gender – or raced-based, it is." *Stepheny v. Brooklyn Hebrew Sch. for Special Children*,

356 F. Supp. 2d at 263.

Applying these standards here, it is evident that Officer Sleurs's harassment of Plaintiff stemmed from the termination of their relationship and not from sex-based animus. The unwelcome voicemails, text messages, and Facebook posts express anger and frustration that Plaintiff had ended their relationship and refused to communicate with him. They also suggest that Officer Sleurs hoped they could resume the relationship. None of his communications, however, permit the inference that his harassment of Plaintiff was motivated by her sex. The communications are facially neutral and there is no circumstantial basis for concluding that they were motivated by anything other than romantic frustration. "Conduct motivated by personal animosity does not run afoul of Title VII's prohibition against altering the terms and conditions of employment because of sex or race." *Stepheny v. Brooklyn Hebrew Sch. for Special Children*, 356 F. Supp. 2d at 263.

### B. Whether the Harassment was Severe or Pervasive

Even assuming that there was evidence that Officer Sleurs's behavior was based on Plaintiff's sex, the record also fails to demonstrate the severe and pervasive harassment required to establish a hostile work environment claim. "In order to survive summary judgment on a claim of hostile work environment harassment, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment.'" *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. at 21).

The standard for a hostile work environment includes objective and subjective elements: "[t]he conduct alleged must be severe and pervasive enough to create an environment that 'would reasonably be perceived, and is perceived, as hostile or abusive.'" *Schwapp v. Town of Avon*, 118

F.3d 106, 110 (2d Cir. 1996) (citation omitted); *see also Brennan v. Metro. Opera Ass'n, Inc.*, 192 F.3d 310, 318 (2d Cir. 1999) ("A work environment will be considered hostile if a reasonable person would have found it to be so and if the plaintiff subjectively so perceived it."). Courts must consider the totality of the circumstances in assessing whether an environment is hostile, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 767-68 (2d Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. at 23). Generally, "incidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano v. Costello*, 294 F.3d at 374 (citation omitted). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id.* (citation omitted). "These standards for judging hostility" are intended to be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. at 80).

The Second Circuit has consistently dismissed hostile work environment claims that involve harassment of greater frequency and severity than Officer Sleurs's unwelcome communications. *See Alfano v. Costello*, 294 F.3d at 379 (citing cases where evidence was insufficiently severe or pervasive as a matter of law). Mindful of this case law, the Court finds that the present facts fail to establish the requisite pervasiveness or serverity. First, the unwelcome communications occurred over the span of approximately one week and consisted of five voicemails, approximately thirty text messages, and one Facebook post. *See* O'Connor Aff., Ex. A. While "[t]here is not fixed number of incidents that a plaintiff must endure to establish a hostile work environment," *Alfano v. Costello*,

294 F.3d at 379, the limited time period and number of incidents of harassment here certainly suggests that Plaintiff's workplace was not permeated with discriminatory intimidation. Second, the communications themselves do not raise to the level of objective severity required to prove a hostile work environment. Some of the communications express anger using profanity, but these communications are at most offensive and not threatening or humiliating. Furthermore, for as many angry communications Officer Sleurs sent, he sent a roughly equal number that express remorse and seek forgiveness for his behavior. Plaintiff may have subjectively found that these communications were intimidating or harassing, but the issue is whether they were "objectively hostile." *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d at 426. Nor does the other conduct alleged of Officer Sleurs—driving his truck in Plaintiff's neighborhood, friending one of her friends on Facebook, and commenting on her brother's fiance's Facebook—change the analysis. Indeed, Plaintiff acknowledges that these actions were not severe. *See* Dole Aff. at ¶ 17. Officer Sleurs's behavior may have been inappropriate and annoying, but "[t]he 'standard for redress is a hostile work environment, not an unpleasant one.'" *Conklin v. Cty. of Suffolk*, 859 F. Supp. 2d at 426 (citation omitted).

In addition to the above reasons for finding that Officer Sleurs's behavior did not alter the conditions of Plaintiff's employment, the Court also notes that all of the conduct occurred while Officer Sleurs and Plaintiff were both on disability leave. "As a general proposition, employers are not responsible under Title VII for hostile sexual acts resulting from nonwork-related, off-duty interactions between co-employees." *Clarke v. Pacifica Found.*, 2011 WL 4356085, at *19 (E.D.N.Y. Sept. 16, 2011) (quoting *Feliciano v. Alpha Sector, Inc.*, 2002 WL 1492139, at *8 (S.D.N.Y. July 12, 2002)).

### C. Plaintiff's Request for Relief Under Federal Rule of Civil Procedure 56(d)

Having found that Plaintiff has failed to establish that she was subjected to a hostile work environment based on her sex, the Court need not address whether the alleged hostile work environment would be imputed to the Defendant. It therefore follows that Plaintiff is not entitled to the relief requested under FED. R. CIV. P. 56(d) because that request is premised upon seeking additional facts relevant to the issue of whether Officer Sleurs's conduct may be imputed to the Defendant.

Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." FED. R. CIV. P. 56(d). The affidavit should explain "1) the nature of the uncompleted discovery, i.e., what facts are sought and how they are to be obtained; and 2) how those facts are reasonably expected to create a genuine issue of material fact; and 3) what efforts the affiant has made to obtain those facts; and 4) why those efforts were unsuccessful." *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 926 (2d Cir. 1985).

Here, Plaintiff's counsel has filed an affidavit representing that Plaintiff has not been afforded an opportunity to depose (1) Officer Sleurs; (2) other employees of the Defendant; and (3) Jamie Davis, an ex-girlfriend of Officer Sleurs. Dkt. No. 31-2, Aff. of Thomas E. DeLorenzo, dated Feb. 13, 2017, at ¶ 3, 12, & 14. Plaintiff's counsel represents that these witnesses' testimony is relevant to the Defendant's knowledge of Officer Sleurs's "propensity to act in a harassing manner towards women" and "the steps taken, if any, to reprimand Officer Sleurs for his conduct in this

matter and any prior inappropriate conduct." *Id.* at ¶ 4.

As is apparent from Plaintiff's counsel's affidavit, the additional discovery sought is relevant to the issue of whether Officer Sleurs's conduct may be imputed to the Defendant, and not to the issue of whether Plaintiff was subjected to a hostile work environment. For that reason, the affidavit does not show that further discovery would reasonably be expected to produce a genuine issue of material fact and does not provide a basis for denying or staying Defendant's Motion. Plaintiff's FED. R. CIV. P. 56(d) request is **denied**.

Accordingly, for the foregoing reasons, Defendant's Motion is **granted** and this action is **dismissed**.

### IV.  CONCLUSION

For the reasons stated herein, it is hereby

**ORDERED**, that Defendant's Motion for Summary Judgment (Dkt. No. 26) is **GRANTED** and this action is **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date:  April 25, 2017
       Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge